Edward TIMMONS, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES; Thomas A. Coughlin, III individually and as Commissioner of the New York State Department of Correctional Services; Charles J. Scully, individually and as Superintendent of Green Haven Correctional Facility; Saul Rosenblum, individually and as Medical Director of Green Haven Correctional Facility; John Doe and Mary Roe, such being fictional names for one or more correctional officers of the New York State Department of Correctional Services employed at Green Haven Correctional Facility; and Smith Kline Biomedical Laboratories, Defendants.

No. 89 Civ. 6400 (LBS).

United States District Court, S.D. New York.

May 25, 1995.

Whitman Breed Abbott & Morgan (C. MacNeil Mitchell, Adam J. Freedman, of counsel), New York City, for plaintiff.

Dennis C. Vacco, Atty. Gen. of the State of N.Y. (Susan L. Watson, Asst. Atty. Gen., of counsel), New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that the defendants violated his constitutional rights by failing to provide him with an HIV antibody blood test before (mis)diagnosing him as having AIDS, and by segregating him in an AIDS Room in the prison infirmary. Plaintiff also alleges that defendants violated Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), by virtue of his segregation in the AIDS room. Finally, plaintiff brings a state law claim for negligence for the misdiagnosis. He requests an award of damages for the alleged violations.

The action was discontinued as to defendant Smith Kline Biomedical Laboratories by stipulation of both parties on July 26, 1990. The complaint against defendant Dr. Saul Rosenblum was dismissed by written opinion on April 13, 1993.

Defendants DOCS, Thomas A. Coughlin, III, Commissioner of DOCS (as sued in his personal capacity), and Charles Scully, Superintendent of Green Haven Correctional Facility (as sued in his personal capacity), now move for summary judgment dismissing the complaint against them pursuant to Fed. R.Civ.P. 56. For the reasons detailed below, defendants' motion is granted in part and denied in part.

## STATEMENT OF THE FACTS

Plaintiff, Edward Timmons, is an inmate who has been in the custody of DOCS since 1984. Plaintiff's Complaint ("Compl.") ¶ 13. During the period in question, he was confined to the Green Haven Correctional Facility ("Green Haven"), in Stormville, New York. Thomas A. Coughlin, III, was the Commissioner of DOCS and Charles Scully was the Superintendent of Green Haven during the relevant time period. Defendants' Rule 3(g) Statement ("Def. 3(g) St."), dated Dec. 22, 1993, ¶ 2.

After plaintiff developed skin lesions in August 1986, a physician's assistant at Green Haven took a biopsy and sent it to Smith Kline Laboratories. Deposition of Ellen Youssef ("Youssef Dep."), dated Aug. 19, 1992, at 40, attached to Def. 3(g) St. as Exhibit A. The pathological diagnosis was "consistent with early Kaposi's Sarcoma". Compl. ¶ 23; Youssef Dep. at 41. Based on that diagnosis alone, plaintiff was informed by Green Haven medical staff on or about November 5, 1986 that he had AIDS. Green Haven did not make use of a widely-available HIV antibody blood test to confirm the diagnosis of AIDS because a diagnosis of Kaposi's Sarcoma in a young black male such as plaintiff was characterized by the Center for Disease Control at that time as a reliable indicator of an immuno-compromised individual. Youssef Dep. at 45. Defendants have provided evidence that the use of the HIV antibody blood test during this period was controversial. *See* Appendix 2 to Defendants' Reply Memorandum of Law (National Institute of Justice, *AIDS in Correctional Facilities* 37 (April 1986)).

After being told that he had the AIDS virus, plaintiff was informed that he could choose between continuous cell confinement for 24 hours a day in the psychiatric unit,[1] or he could be confined with other AIDS-afflicted inmates in the infirmary's AIDS Room. Affidavit of Edward Timmons ("Timmons Aff."), dated March 22, 1994, ¶¶ 9–10. Plaintiff elected the AIDS Room.

Inmates were assigned to the AIDS Room upon a medical diagnosis of AIDS. Youssef Dep. at 12. It was DOCS policy to place AIDS patients in special-needs units, and Green Haven policy to house them in an AIDS Room in the prison infirmary. *See* Exhibit 2 to Deposition of Charles Scully ("Scully Dep."), dated July 31, 1992 (*DOCS Policies, Procedures and Guidelines Manual, Item # 57, AIDS* (Dec. 23, 1985)); *see also* Youssef Dep. at 15. Apart from being concerned about the medical needs of AIDS patients, prison officials were concerned about the safety of AIDS patients from gen-

---

1. Plaintiff had been subject to a disciplinary hearing before the AIDS diagnosis was made and was ordered "keeplocked" for a two-month period beginning in November 1986. Affidavit of Charles Scully ("Scully Aff."), dated July 18, 1994.

eral population inmates owing to the fact that, in 1986, there was great fear about the spread of AIDS. Youssef Dep. at 15; Scully Dep. at 30. Since June 1987, a greater effort has been made to place medically-cleared AIDS/HIV prisoners into the general population. Def. 3(g) St. ¶ 5. Currently, inmates with AIDS or HIV infection are not segregated from the general population. Youssef Dep. at 7.

Plaintiff alleges that, while in the AIDS Room, he was shunned by medical staff, correctional staff and other inmates for fear of infection. Timmons Aff. ¶¶ 13–15. It is undisputed that he was not provided with the same educational, recreational and rehabilitative programming afforded inmates of the general prison population. However, the patients in the AIDS Room were afforded amenities not granted other infirmary patients or the general population, such as their own bathroom and shower, a television and a hotplate. Affidavit of Ellen Youssef ("Youssef Aff."), dated June 30, 1994, ¶ 9.

Plaintiff claims that, subsequent to his assignment to the AIDS Room, he asked the prison medical staff for an HIV antibody blood test to confirm the AIDS diagnosis, and that his request was denied. Plaintiff further claims that Dr. Rosenblum, Green Haven's medical director at the time, said that if he wanted another test he would have to pay for it himself. Timmons Aff. ¶ 21.

In or about February 1987, plaintiff filed an inmate grievance seeking further testing for AIDS. On March 10, 1987, plaintiff was re-tested and examined for the presence of the HIV antibody at Albany Medical Center. The initial test was negative for HIV, as were repeat tests for both HIV and Kaposi's Sarcoma. Plaintiff was released from the AIDS Room in April 1987 and returned to the general population.

## DISCUSSION

### A. *Summary Judgment*

■ Summary judgment may be granted only where the moving papers and affidavits

submitted by the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the movant has carried his initial burden, the party opposing the motion must show that there is in fact a genuine dispute as to one or more of the material facts and must present specific evidence in support of his contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Bearing this standard in mind, we now turn to the substantive issues on which defendants seek summary judgment.

### B. *Section 1983 Claims*

Plaintiff contends that defendants violated his procedural due process rights under the Fourteenth Amendment by segregating him in the AIDS Room without first providing him with an HIV antibody blood test. He also alleges that defendants violated his Eighth Amendment rights both by failing to provide him with the test and by segregating him in the AIDS Room. He argues that these violations are actionable under 42 U.S.C. § 1983.

### 1. DOCS

■ Plaintiff's § 1983 claims against DOCS are barred by the Eleventh Amendment. It is well-settled that states and their agencies cannot be sued absent either their express or implied consent or an express abrogation by Congress of the states' Eleventh Amendment immunity.[2] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662

---

**2.** The Second Circuit has held that DOCS is a state agency entitled to assert the State of New York's Eleventh Amendment immunity. *See Santiago v. New York State Dept. of Correctional* *Services*, 945 F.2d 25, 28 (2d Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

(1974). The record before the Court does not include any consent by the State of New York to permit this suit to proceed in federal court against DOCS. Nor did Congress abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 341 (1979). Therefore, plaintiff's § 1983 claims against DOCS are dismissed.

### 2. Defendants Coughlin and Scully

■■ Where damages are sought in an action brought under § 1983, the defendant, to be held liable, must be personally responsible for the alleged constitutional deprivation. *Al–Jundi v. Estate of Nelson Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). The plaintiff here accordingly must demonstrate the "personal involvement" of the state commissioner of corrections (defendant Coughlin) and the superintendent of prison (defendant Scully), and not a mere "linkage in the prison chain of command." *Id.* (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)).

■ In *Williams v. Smith,* the Second Circuit held that a defendant may be personally involved in a § 1983 violation in four ways: 1) the defendant may have directly participated in the infraction or have ordered that the action be taken; 2) the defendant may have failed to remedy a wrong after learning of the violation; 3) the defendant may have created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or 4) the defendant may have been grossly negligent in managing the subordinate who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

■ a. *Defendant Coughlin.* There is no evidence that defendant Coughlin was personally involved in, or even knew about, the diagnosis of plaintiff's condition or the decision to place plaintiff in the AIDS Room. Nor is there any evidence that defendant Coughlin was negligent in managing those of his subordinates who were involved in the diagnosis and the decision to remove plaintiff from the general prison population. Accordingly, plaintiff's § 1983 claims against defendant Coughlin are dismissed.

■ b. *Defendant Scully.* In like vein, there is no evidence that defendant Scully had any personal involvement in the medical decision not to utilize a blood test to confirm plaintiff's original AIDS diagnosis. *Cf. Kaminsky v. Rosenblum,* 737 F.Supp. 1309, 1317 (S.D.N.Y.1990) (summary judgment denied upon evidence that inmate plaintiff's physician wrote directly to Superintendent Scully advising him of inmate's complaint of inadequate medical attention, thereby triggering personal involvement), *appeal dismissed,* 929 F.2d 922 (2d Cir.1991). The most that can be said is that defendant Scully received notice of the controversy regarding the diagnosis of plaintiff's medical condition *after* receiving plaintiff's grievance about the failure to administer the blood test. The record is clear, however, that plaintiff received notification soon after filing his grievance that he would be given a blood test, and that the test was in fact administered to him. *See* Compl. ¶¶ 32–33. Because plaintiff's procedural due process claim appears to be based entirely upon the failure to test plaintiff before segregating him, we dismiss this claim against defendant Scully. Insofar as plaintiff's Eighth Amendment claim is also based upon a failure to test, we dismiss this claim against defendant Scully as well.

Defendant Scully does concede that he was responsible for Green Haven's policy of segregating AIDS inmates in the AIDS Room. He argues, however, that he is entitled to qualified immunity on this portion of plaintiff's Eighth Amendment claim.

■ Good faith or qualified immunity is an affirmative defense in actions under § 1983. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982); *Williams,* 781 F.2d at 322. Once the defense is raised, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow,* 457 U.S. at 818; *Fox v. Coughlin,* 893 F.2d 475, 477 (2d Cir.1990) (per curiam). Even where a right has been clearly established, a defendant is immune from liability if it was objectively reasonable for him to believe that his acts did not violate

that right. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Piesco v. City of New York, Dept. of Personnel,* 933 F.2d 1149, 1160 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

Plaintiff alleges that his Eighth Amendment rights were violated by his being subjected to the conditions of the AIDS Room[3] and by his being denied, by virtue of his segregation, access to programs of rehabilitation and education that were available to inmates in the general prison population. However, the Supreme Court stated in 1981 that, although conditions of confinement "must not involve the wanton and unnecessary infliction of pain ... conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Three years later, in *Cordero v. Coughlin,* 607 F.Supp. 9, 10, 11 (S.D.N.Y.1984), the court rejected a claim by prisoners suffering from AIDS that the policy of segregating them from the general prison population, and the subsequent loss of social, recreational and rehabilitative opportunities, violated their rights under the First, Eighth and Fourteenth Amendments. In light of these decisions, we find that it was not "clearly established" at the time of the events in question that the conditions in the AIDS Room or the denial of work and educational programs violated plaintiff's rights under the Eighth Amendment. *See Piesco,* 933 F.2d at 1160.[4] Therefore, defendant Scully is entitled to qualified immunity as to plaintiff's Eighth Amendment claim.[5]

---

3. Plaintiff alleges that the correctional staff in the AIDS Room "wore rubber gloves and spurned and avoided any contact with the plaintiff and with other inmates." Complaint ¶ 28. He contends that food trays were placed on chairs, which were then pushed into the cells to provide inmates their meals. He also alleges that he was treated inhumanely by his keepers and avoided by other inmates. *Id.* at ¶¶ 28–29.

4. Plaintiff contends that neither *Rhodes* nor *Cordero* bars his recovery under the Eighth Amendment because of the fact that, after those cases were decided, knowledge and understanding of the treatment of AIDS evolved so rapidly that Green Haven officials could not reasonably have believed in late 1986 and early 1987 that segregating plaintiff from the general prison population was a necessary, or even desirable, measure.

This argument is of little help to plaintiff. As we have noted, clearly-established law at the time of the events in question denied to *all* prisoners—both those within and those without the general prison population—the ability to claim work and educational programming as constitutional entitlements. *See Cordero,* 607 F.Supp. at 10, 11. Additionally, as discussed above, the holding of *Rhodes* indicated that conditions such as those in the AIDS Room were not cruel and unusual punishment. *See* 452 U.S. at 347, 101 S.Ct. at 2399. Plaintiff's contention that evolving standards of medical knowledge about AIDS should or could have prevented his segregation might well be relevant to a claim of a denial of equal protection of the laws, *see infra* note 5. However, we do not see how this contention can support a claim of cruel and unusual punishment under the Eighth Amendment when prison officials could constitutionally have denied plaintiff the programs, opportunities, and conditions about which he complains, even if he had never been segregated from the general prison population.

5. Plaintiff's Complaint also contains a claim under the Equal Protection Clause of the Fourteenth Amendment. Complaint ¶ 47. However, this claim is not mentioned anywhere else in plaintiff's papers and was not raised by either party at oral argument. In essence, plaintiff's claim seems to be that by late 1986 and early 1987, medical understanding and treatment of AIDS had advanced to the point where prison officials should have known that there was no reason, medical or otherwise, to segregate AIDS inmates from the general prison population, and, consequently, that AIDS inmates were "similarly situated" to non-AIDS inmates for all purposes related to the nature of confinement.

We reject plaintiff's equal protection argument. The *Cordero* court explicitly held in 1984 that AIDS victims were not similarly situated to other prisoners for purposes of equal protection analysis. *Cordero v. Coughlin,* 607 F.Supp. 9, 10 (S.D.N.Y.1984). Although societal understanding of AIDS clearly improved between 1984 and the dates of the events in question (late 1986 and early 1987), there were no intervening developments in the law that would have indicated to defendant Scully that the *Cordero* holding was questionable. We therefore do not find that Scully's treatment of plaintiff violated an equal protection right that was "clearly established" at that time. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (stating that the unlawfulness must be apparent "in the light of pre-existing law"); *see also Piesco,* 933 F.2d at 1160.

## C. *Section 1985 Claim*

Plaintiff next claims that defendants conspired to deprive him of his constitutional and statutory rights in violation of 42 U.S.C. § 1985. He does not argue the point in his papers to the Court, nor present or point to any facts that would support a finding of conspiracy. Rather, he appears to rest on the conclusory allegation contained in his complaint that such a conspiracy existed. *See* Compl. ¶ 55. The claim is accordingly dismissed as to all defendants. *See, e.g., Dubray v. Rosebud Hous. Auth.,* 565 F.Supp. 462, 466 (D.S.D.1983) ("It is well settled that conclusory allegations of a conspiracy are insufficient to state a claim under § 1985(3).").

## D. *Section 504 Claim*

As noted above, plaintiff contends that defendants violated his statutory rights under Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988) ("the Act"), by segregating him in the AIDS Room. Section 504 prohibits a federally-funded state program from discriminating against a handicapped individual solely by reason of his or her handicap.[6]

The defendants argue that the Court need not determine whether DOCS' policy of segregating AIDS inmates during late 1986 and early 1987 violated the Act because the question of whether an individual such as plaintiff qualified as "handicapped" within the meaning of the Act was not clearly established at the time of the events in question. In defendants' view, they are entitled to qualified immunity on this claim.

■ Defendants' argument fails as it relates to DOCS. The defense of qualified immunity is available to state actors who are sued in their *individual* capacities, not to sovereign state bodies such as DOCS that only exist in *official* capacities. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Nor does DOCS enjoy any protection from plaintiff's claim under the Eleventh Amendment: in 42 U.S.C. § 2000d–7, Congress has explicitly overridden the states' Eleventh Amendment immunity for all claims brought pursuant to "section 504 of the Vocational Rehabilitation Act of 1973". Plaintiff's claim under the Act as against DOCS may accordingly go forward.

■ Defendants' argument also fails as it relates to defendants Coughlin and Scully. Although these two defendants are being sued in their individual capacities and can thus claim qualified immunity, they do not, in the end, demonstrate that they deserve it.

The essence of Coughlin and Scully's argument here is that, at the time of the events in question, it was not clearly established that asymptomatic carriers of a contagious disease, such as AIDS, qualified as handicapped individuals under the Act and could thus claim its protections. The Act defines a "handicapped individual" as "[any] person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B).

In support of their argument, Coughlin and Scully rely principally on the 1987 Supreme Court decision in *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), in which the Court expressly reserved decision on the question of whether "a carrier of a contagious disease such as AIDS could be considered to have a physical impairment, or whether such a person could be considered, *solely on the basis of contagiousness,* a handicapped person as defined by the Act." 480 U.S. at 282 n. 7, 107 S.Ct. at 1128 n. 7 (emphasis added).

*Arline,* however, reserved decision on the applicability of the Act only as it related to asymptomatic carriers of a contagious disease. The plaintiff in this case was quite clearly *not* asymptomatic: he was diagnosed as having Kaposi's Sarcoma, which prison

---

**6.** "No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794.

officials interpreted as a sign that he was in the full-blown stages of the AIDS disease. Indeed, it was the case in 1986 that inmates were generally diagnosed as having AIDS only *after* physical symptoms became manifest, and it was the experience of Green Haven medical personnel at the time that inmates diagnosed with AIDS died within twelve months of the diagnosis and increasingly needed medical care. Youssef Aff. ¶ 5.

The fact that plaintiff did not in reality suffer from either Kaposi's Sarcoma or AIDS does not alter the conclusion that he qualified as a "handicapped individual" under the Act. The Act provides that a person who is regarded by other people as having a physical impairment, but who actually does not, counts as a "handicapped individual" entitled to federal protection against discrimination. *See* 29 U.S.C. § 706(7)(B)(iii). None of the caselaw relied upon by defendants called this plain-language meaning into doubt.

We conclude that defendants Coughlin and Scully have failed to demonstrate that it was not clearly established at the time of the events in question that plaintiff came within the ambit of Section 504 of the Vocational Rehabilitation Act. We accordingly reject their claim of qualified immunity on plaintiff's Section 504 claim. That claim may go forward as against all defendants.

### E. *Pendent State Law Claim*

 This Court lacks jurisdiction to hear plaintiff's state law tort claim. DOCS enjoys Eleventh Amendment immunity against this claim; and, although federal courts may hear federal claims against state officers, they may not hear pendent state law claims against state officers. *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Plaintiff's state law claim is accordingly dismissed as against all defendants.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. The parties are to advise the Court in writing within thirty days of the date of this Opinion how much time will be required to complete all discovery. This case will then proceed to trial before a magistrate pursuant to the consent of the parties.

SO ORDERED.