**Gregory E. DOUGLAS, Plaintiff,**

**v.**

**H. Christian DeBRUYN, et al., Defendants.**

**No. IP 96–0656–C H/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 10, 1996.

Gregory E. Douglas, Pendleton, Indiana, pro se.

None appearing; case was dismissed on petition to proceed in forma pauperis.

## ENTRY DENYING REQUEST TO PROCEED IN FORMA PAUPERIS AND DIRECTING ENTRY OF JUDGMENT

HAMILTON, District Judge.

This cause is before the court on the plaintiff's complaint and on his request to proceed *in forma pauperis.*[1] The court finds that the plaintiff's request to proceed *in forma pauperis* should be denied and the action dismissed.

Plaintiff Gregory Douglas is confined at the Correctional Industrial Complex (the "CIC"). He seeks injunctive relief and damages based on his classification at that institution and the process and equal protection rights have been violated by assignment to the CIC's "Idle Unit." He also claims that the conditions to which he is subjected in the Idle Unit violate the Eighth Amendment. Douglas has named as defendants CIC Superintendent Charles B. Miller, Commissioner of the Indiana Department of Correction H. Christian DeBruyn, and thirteen other individuals who serve as either administrators or correctional officers at the CIC. The defendants are sued in both their individual and their official capacities.

Because Douglas is proceeding *pro se,* his pleadings are to be liberally construed. See *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (stating that *pro se* complaints should be held to a less stringent standard than formal pleadings drafted by lawyers); *Kincaid v. Vail,* 969 F.2d 594, 598 (7th Cir.1992) (same). Nonetheless, the substantive law applicable to his claims cannot be ignored simply because of his *pro se* status. *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994).

The plaintiff is without sufficient funds to prepay the filing fee required by 28 U.S.C. § 1914(a). Accordingly, his request to proceed *in forma pauperis* must be granted unless the action is frivolous or malicious, fails to state a claim for which relief may be granted, or seeks money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The screening of complaints submitted with requests to proceed *in forma pauperis* is required by 28

1. The complaint in this action is signed only by Mr. Douglas. Three other inmates (Mark Lehman, Frank Lloyd, and Balogun Obatalye Asim) are mentioned in the section of the form complaint entitled "Parties," and are confined in the same institution where Douglas is housed. Two of these other three inmates (Lehman and Lloyd) have submitted applications to proceed *in forma pauperis,* but none of the three has signed the complaint. Those requests to proceed *in forma pauperis* should be filed and docketed, but are denied as moot. Given the disposition of Douglas' request to proceed *in forma pauperis,* the positions of the putative plaintiffs in this action need not be explored. If Lehman, Lloyd, and Asim have a claim, it should be presented in a proper manner and in an appropriate forum. They will be provided with a copy of this Entry so that their status as putative plaintiffs in this action is entirely clear.

U.S.C. § 1915A. Under the recently amended § 1915, as with the previous version of § 1915, a district court may review the complaint and dismiss on its own initiative those claims premised on meritless legal theories or that clearly lack any factual basis. *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). "Frivolous claims are those that have no arguable basis in law or in fact." *Talley v. Lane,* 13 F.3d 1031, 1033 (7th Cir.1994), citing *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).

A complaint fails to state a claim for which relief may be granted if, viewing the facts in the light most favorable to plaintiff and assuming them to be true, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle the plaintiff to relief. *E.g., Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A *pro se* complaint will be dismissed only "if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 378 (7th Cir.1988).

The plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. A cause of action is provided by 42 U.S.C. § 1983 against "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Jurisdiction for this action is conferred by 28 U.S.C. § 1343(a)(3). To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). The element of state action is satisfied in this case.

Without a constitutional or statutory violation, a plaintiff cannot make out a prima facie case under § 1983. *Juriss v. McGowan,* 957 F.2d 345, 349 n. 1 (7th Cir.1992), citing *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Clarity in identifying the precise constitutional right implicated is critical in analyzing a claim under § 1983. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Whether a constitutional violation has occurred can be determined only by applying the standards applicable to that particular constitutional provision. *Id.* Three constitutional provisions are arguably implicated by Douglas' allegations—the Fourteenth Amendment's guarantees of (1) due process of law and (2) equal protection of the law, and (3) the Eighth Amendment's prohibition against cruel and unusual punishments.

Douglas claims his Fourteenth Amendment due process rights were violated when he was placed in the Idle Unit because of allegedly insufficient job, vocational, rehabilitation, and educational programs. He specifically claims the defendants violated his procedural due process rights, a state-created liberty interest, and his right to equal protection. Douglas does not allege that he was assigned to the Idle Unit as the result of some misconduct, nor that this assignment was made for any punitive reasons. Accordingly, the claim is not examined in relation to whether the assignment was made as a punishment.

The Seventh Circuit has recently explained: "The Due Process Clause itself does not create a right for prisoners to leave the area around their cells, to visit other prisoners, or not to be subjected to lockdowns; only the Eighth Amendment limits these restrictions." *Higgason v. Farley,* 83 F.3d 807, 809 (7th Cir.1996). In doing so, the Court of Appeals analyzed at some length the effect of *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), in which the Supreme Court "changed the method of determining a prisoner's liberty interest." *Higgason,* 83 F.3d at 809. "Under *Sandin,* we must determine if … [the challenged conditions] worked any 'atypical and significant hardship' on [the plaintiff] 'in relation to the ordinary incidents of prison life,' or as to whether [those conditions] in-

fringed any rights protected by the Due Process Clause 'of its own force.'" *Id.* at 809, quoting *Sandin,* — U.S. at —, 115 S.Ct. at 2300. The *Sandin* methodology is consistent with prior decisions of the Supreme Court, such as its explanation in *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976): "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment by prison authorities to judicial oversight."

 Douglas' claim in this case is that the absence of particular types of programming—access to jobs, vocational, rehabilitation, and educational programs—violates the Due Process Clause. The court concludes otherwise. The absence of each of these programs individually and the absence of them in their totality do not infringe upon any rights protected by the Due Process Clause "of its own force." However useful or productive such programs might be as a matter of correctional policy, the absence of these programs does not work any "atypical and significant hardship" on the plaintiff "in relation to the ordinary incidents of prison life."[2] Accordingly, Douglas' complaint, even when liberally construed, does not assert a viable due process claim based on the fact that he has been placed in the Idle Unit.

 The plaintiff's claim of an equal protection violation also fails. To support an equal protection claim, a plaintiff must show that the discrimination against him was intentional or deliberate. *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982). Inconsistency in the operation of a prison does not, in itself, constitute a denial of equal protection.

*Id.* The Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. *Id.* Because the plaintiff complains only that he is being "arbitrarily discriminated against," Complaint at 5, he fails to state a cognizable equal protection claim.[3]

 It is "undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, —, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). When a prisoner claims particular conditions or treatment associated with his incarceration violate the Eighth Amendment's proscription against cruel and unusual punishment, he may use § 1983 as a means to redress conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); see also *James v. Milwaukee County,* 956 F.2d 696, 699 (7th Cir.1992) ("not all prison conditions trigger eighth amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety.").

 A plaintiff claiming a violation of the Eighth Amendment must satisfy both an ob-

---

**2.** Douglas attempts to premise a state-created liberty interest on the language of Ind.Code § 11–10–6–3(c), which states: "A confined offender may not be denied the opportunity to participate in educational, training, or voluntary employment programs solely because of compulsory work." The guarantee of this statute, if it is a guarantee for due process purposes after *Sandin,* is not triggered by the complaint, however, for there is no allegation that Douglas' housing or other classifications entail "compulsory work."

**3.** The absence of consistent criteria in making Idle Unit assignments, such as would be indicated by empirical discrepancies in how those assignments are made, does not implicate a due process or equal protection interest in the operation of a discretionary program such as the Idle Unit. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981).

jective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind). *Wilson v. Seiter,* 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 2324, 2326–27, 115 L.Ed.2d 271 (1991); *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir.1993). In *Farmer,* the Court reviewed the two necessary elements of an Eighth Amendment violation:

> First, the deprivation alleged must be, objectively, "sufficiently serious" ...; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities".... The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson,* 501 U.S. at 297 [111 S.Ct. at 2323] (internal quotation marks, emphasis and citations omitted). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Ibid.* ... In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

511 U.S. at ——, 114 S.Ct. at 1977. *Farmer* then refined the term "deliberate indifference":

> We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at ——, 114 S.Ct. at 1979.

The fundamentally important, but still relatively narrow, interest of the Eighth Amendment is illustrated by a complex case testing the constitutionality of prison conditions in which Chief Judge Henderson from the Northern District of California surveyed the boundaries of this area of law. He explained that prison administrators

> may impose conditions that are " 'restrictive and even harsh' " ...; they may emphasize idleness, deterrence, and depriva-

tion over rehabilitation. This is not a matter for judicial review or concern unless the evidence demonstrates that conditions are so extreme as to violate basic concepts of humanity and deprive inmates of a minimal level of life's basic necessities.... In short, absent a showing of constitutional infringement, courts may not substitute their judgment or otherwise interfere with decisions made by prison officials.

*Madrid v. Gomez,* 889 F.Supp. 1146, 1262 (N.D.Cal.1995) (citations omitted).

 To state a viable Eighth Amendment claim here, therefore, the plaintiff must allege that the conditions of the Idle Unit constitute an excessive risk to his health or safety, that the defendants had knowledge of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the defendants also drew that inference. *Sellers v. Henman,* 41 F.3d 1100 (7th Cir.1994). Although the plaintiff has supplied a certain measure of detail concerning his claims, he has not alleged circumstances that would support the elements of a viable claim for the imposition of cruel and unusual punishment.

 The claim the plaintiff presents most forcefully is his allegation that he is confined to his double-occupancy cell for sixteen hours without a toilet or drinking water. Douglas admits that restroom use is provided at the discretion of correctional officers. This claim, therefore, is merely the description of a procedure. Douglas makes no allegation that the defendants have deliberately denied him reasonable or requested access to drinking water or the restroom. No claim under the Eighth Amendment is stated based on merely being confined in a location within the prison where the designated facilities are not conveniently available to him. Mere unpleasantness or inconvenience will not support a constitutional claim. See *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988); *Stewart v. McGinnis,* 800 F.Supp. 604, 616 (N.D.Ill.1992), *aff'd,* 5 F.3d 1031 (7th Cir.1993).

 The other conditions described in the complaint are also insufficient in support-

ing an arguable claim under the Eighth Amendment, even accepting as true, for purposes of acting on the *in forma pauperis* request, that the description is accurate. Douglas claims that assignment to the Idle Unit violates the Eighth Amendment because it denies him access to rehabilitation programs. The Eighth Amendment, however, does not compel affirmative rehabilitative programming within a prison. *Timmons v. New York State Dept. of Correctional Services*, 887 F.Supp. 576, 581 n. 4 (S.D.N.Y. 1995), citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Douglas alleges an Eighth Amendment violation based upon the claimed denial of access to vocational and educational programs. However, "there is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that rise to a violation of the Eighth Amendment." *Garza v. Miller*, 688 F.2d 480, 485–86 (7th Cir.1982). Inasmuch as none of the conditions at issue give rise to Eighth Amendment violations, there can be no asserted claim for wrongful denial of access to educational or vocational programs.

▪ Douglas also notes that even though he is unemployed, he is required to purchase medication unless emergency attention is required. Although prison officials have a duty to ensure that inmates receive adequate medical care, see *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir.1996) (discussing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Farmer* ), in order to impose liability an inmate must demonstrate that the official was "deliberately indifferent" to the inmate's health. *Del Raine v. Williford*, 32 F.3d 1024, 1036 (7th Cir.1994). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979. Douglas' claim in this context fails, because he does not assert that he was ever denied medication when he needed it, or even when he desired it. See *Hudgins v. DeBruyn*, 922 F.Supp. 144 (S.D.Ind.1996).

▪ Plaintiff asserts that his phone privileges were more restricted than those of inmates in the general population. This restriction appears to be a denial of access to the phones for the 16 hours each day he is locked down in his cell. There is no indication from the complaint that he has difficulty accessing a telephone during the remaining eight hours out of each 24–hour day. Greater access to a telephone is not a basic human need, and although a prisoner's access to a telephone could in some circumstances implicate a Sixth Amendment right to the effective assistance of counsel, see *Murphy v. Walker*, 51 F.3d 714, 718 n. 7 (7th Cir.1995), no circumstances of that nature are suggested by Douglas' complaint.

▪ Plaintiff complains that his assignment in the Idle Unit denied him the same amount of recreation time as that afforded prisoners in the general population. Recreation and the ability to obtain physical exercise have been properly recognized as important human needs. See, *e.g.*, *Davenport v. DeRobertis*, 844 F.2d 1310, 1315–16 (7th Cir. 1988). However, there is no constitutional right to a specific form of recreation. Rather, only the objective harm that *can* result from a significant deprivation of movement implicates the Eighth Amendment. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985) (the Eighth Amendment is implicated where a denial of exercise causes the muscles to atrophy and threatens the health of the individual). Douglas does not claim that he is denied any recreation or even a significant amount of recreation; he merely complains that he is denied "the same amount of recreation" as permitted inmates in the general population. Complaint at 5. Moreover, he fails to explain how this limited recreation time has harmed him in any way.

In what may be a related vein, Douglas alleges that he has only restricted access to the institution law library and must forfeit recreation time to utilize that facility. He presents this as a *recreation*-oriented issue, rather than an issue concerning his access to the courts. As a recreation issue, it is a nonstarter, for he merely identifies a choice that is open to him as to how he will use a portion

of his time. The choices are not cruel and unusual, nor is the outcome.

■ While inmates cannot expect to be treated as a guest in a "good hotel," they "must be provided with basic human needs." *Harris v. Fleming*, 839 F.2d at 1235. It is well-established that these basic human needs include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir.1987), citing *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980). The conditions at the CIC's Idle Unit, as the plaintiff describes those conditions, do not amount to even the arguable denial of such basic needs.

Based on the foregoing, the action is frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B) and the plaintiff's request to proceed *in forma pauperis* is denied.[4] Judgment consistent with this Entry shall now issue. This disposition is not an adjudication "on the merits" and does not preclude the submission of a complaint for which the $120.00 filing fee required by 28 U.S.C. § 1914(a) is paid. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A copy of this Entry shall be sent to the inmates who have submitted requests to proceed *in forma pauperis* and to Mr. Asim.

So ordered.

Richard OWEN d/b/a Clark's Greenhouse and Clark's Greenhouse, Inc., Plaintiff,

v.

The KROGER COMPANY, Defendant.

No. IP94–2103–C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 2, 1996.

---

4. In reaching this conclusion, the court recognizes that the recently enacted Prison Litigation Reform Act of 1995, a portion of which is codified at 28 U.S.C. § 1915(e)(2)(B)(ii), authorizes the denial of a request to proceed *in forma pauperis* based on the failure of a complaint to state a claim upon which relief can be granted. That represents an expansion of the narrow grounds on which such a request could formerly be denied. *Cf. Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Although the complaint from Mr. Douglas is subject to dismissal under this standard, it is equally subject to *sua sponte* dismissal under the "frivolous or malicious" standard which existed under the former 28 U.S.C. § 1915(d), and which is retained in 28 U.S.C. § 1915(e)(2)(B)(i).

580

John C. Trimble, Lewis & Wagner, India-
napolis, Indiana, Thomas L. Tarvin, Tarvin &

Alexander, Connersville, Indiana, for Plaintiff.

Michael Rosiello, John R. Maley, Barnes & Thornburg, Indianapolis, Indiana, for Defendant.

## ENTRY

BARKER, Chief Judge.

This contract dispute is before the court on the parties' cross-motions for partial summary judgment. For the reasons discussed below, both motions for partial summary judgment are **denied.**

## I. BACKGROUND [1]

■ Plaintiff Clark's Greenhouse ("Clark's") is a commercial grower of flowers, located in Connersville, Indiana. Clark's is a family owned and operated business, owned and operated by Richard Owen ("Owen") since 1979.[2] Clark's plants, cultivates, harvests, and sells a variety of flowers and vegetables, specializing in the cultivation and sale of irises.

Defendant Kroger is a retail grocery store chain that does business in Indiana. Kroger, through its Northern Floral division, purchased irises from plaintiff for approximately ten years prior to and including the 1992–1994 growing seasons.[3] Both parties characterize their business relationship prior to the 1992 season as a "long and good relationship". (McIntosh Dep., at 125; Pltf. Opp. Brief, at 5). Prior to the 1992 growing season, the parties did not enter into any formal purchase contracts; rather, they usually discussed any agreements as to purchase price and quantity over the phone. (Complaint, at ¶ 4; McIntosh Dep., at 72–74).

Beginning in the summer of 1991, plaintiff met with Kroger representatives to discuss Kroger's anticipated needs for the next year's iris season. As the season approached, Kroger sent "prebooks" to plaintiff approximately two weeks prior to each four-week buying period, specifying the number of irises Kroger would need in that buying period. (R. Owen Dep., at 204). Kroger then followed up with a final purchase order sent by fax to plaintiff the week prior to each week's delivery. (R. Owen Dep., at 205).

In the summer of 1991, Owen met with Joyce McIntosh, Senior Flower Buyer at Northern Floral, and Lew Stroh, then Floral Plant Manager at Northern Floral, to discuss the upcoming 1992 growing season. (McIntosh Dep., at 72; R. Owen Dep., at 9–10). During that meeting, Stroh indicated to Owen that Kroger wanted more flowers in 1992 than it had purchased in 1991. (R. Owen Dep., at 10). Owen asked for an estimate of how many irises Kroger would need for the 1992 season, and Stroh wrote the following on a memopad:

| | | |
|---|---|---|
| 1st period | 12–29/1–25 | 60,000/wk |
| 2nd period | 1–26/2–22 | 60,000/wk |
| 3rd period | 2–23/3–22 | 70,000/wk |
| 4th period | 3–23/4–19 | 70,000/wk |
| 5th period | 4–20/5–17 | 30,000/wk |
| 6th period | 5–18/5–31 | 20,000/wk |

will want 15 ct boxes

(McIntosh Dep., at 80; Exh. G ("1991 memo")). Kroger actually purchased fewer than the 1.2 million irises that it had indicated, in the 1991 memo, it would need during the 1992 season.[4]

In the summer of 1992, Owen, McIntosh and Stroh met to discuss Kroger's needs for the upcoming 1993 season. At this meeting, they discussed Owen's frustration that Kroger had not purchased all the irises that he expected it to purchase in the 1992 season, based upon the figures Stroh had provided in

---

1. Kroger argues that plaintiff failed to provide a "statement of genuine issues" as required by Local Rule 56.1, and that we must therefore accept as true, Kroger's Statement of Material Undisputed Facts. Plaintiff has incorporated its statement of genuine issues, with citations to the record, into its opposition brief. (Pltf. Opp. Brief, at 22–24). This satisfies the requirements of L.R. 56.1 See, Mirocha v. TRW, Inc., 805 F.Supp. 663, 675 (S.D.Ind.1992).

2. For the sake of convenience and clarity, we will refer to Owen and Clark's collectively as "plaintiff".

3. The iris growing season in Indiana lasts from January until June. (Def.Exh. A, Rog. 6).

4. The parties do not state exactly how many irises Kroger did purchase in 1992, but they agree that it was less than the amount indicated on the 1991 memo.

the 1991 memo. (McIntosh Dep., at 115–16). McIntosh has testified that she told Owen that Kroger could not commit to a guaranteed weekly number due to the nature of its business. (McIntosh Dep., at 117). Owen said that he needed a number so that he would know what to do for the 1993 season. (*Id.*) McIntosh claims that she felt uncomfortable giving an estimate that far in advance, but that Stroh advised McIntosh to "give him about half of what we did last year". (*Id.*, at 118). McIntosh then wrote the following on a memopad:

| 1st period | 30,000/wk |
| 2nd period | 30,000/wk |
| 3rd period | 35,000/wk |
| 4th period | 55,000/wk |
| 5th period | 30,000/wk |

(*Id.*, at 118; Exh. H. ("1992 memo")).[5] Kroger actually purchased fewer than the 720,000 irises it had indicated, in the 1992 memo, it would need during the 1993 season.[6]

